IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TRACY HUA et al., | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiffs*, | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., et al., | : | |
| *Defendants*. | : | No. 17-2365 |

**MEMORANDUM**

PRATTER, J.                                                                                       NOVEMBER 21, 2017

### INTRODUCTION

In this case, a husband and wife defaulted on their mortgage payments and Wells Fargo foreclosed on their property. The state-court foreclosure judgment is final, but Wells Fargo still has not executed the judgment — meaning that the couple had time to come to federal court armed with a bevy of consumer-protection and common-law claims. The couple's allegations center on two alleged misdeeds by Wells Fargo: (1) denying the couple's applications to modify their loan, and (2) obtaining force-placed insurance on the property without telling the couple.

Wells Fargo, along with its co-defendants, has moved to dismiss. For the reasons that follow, the Court grants the motion to dismiss and grants Hua and Mu leave to file an amended complaint consistent with this ruling.

### FACTS

In 2007, plaintiffs Tracy Hua and Chi Hung Mu executed a mortgage for an ostensibly residential property in Philadelphia. Initially, the lender was defendant American Home Mortgage Acceptance (AHMA), and the next mortgagee was defendant Mortgage Electronic

Registration System (MERS). In 2011, Hua and Mu defaulted on their loan payments. In 2012, MERS and AHMA assigned their interest in the mortgage to Wells Fargo.

In 2013, Wells Fargo started a mortgage foreclosure action in the Philadelphia Court of Common Pleas, and in 2015, the bank prevailed at trial. The court denied Hua and Mu's post-trial motion, and they did not appeal. In 2016, Wells Fargo secured a writ of execution to satisfy the foreclosure judgment by selling the property.

The foreclosure sale was slated for the summer of 2017, but before it could happen, Hua and Mu filed their complaint in this Court on May 25, 2017. In the meantime, the state court has postponed the foreclosure sale as the parties supposedly work to resolve the debt.

## THE COMPLAINT

Hua and Mu brought this complaint against Wells Fargo, Wells Fargo's mortgage servicer (Select Portfolio Servicing), and its two predecessors in interest (MERS and AHMA). The complaint alleges that Wells Fargo: (1) obtained force-placed insurance on the property without telling the couple and (2) denied the couple's applications to modify their loan.

1. *Force-Placed Insurance*

Wells Fargo seems to have obtained force placed insurance[1] on the property in 2014 — that is, after starting foreclosure proceedings but before prevailing at trial. Hua and Mu claim not to have learned about the insurance until they received a letter from Wells Fargo in March of 2017. They allege that Wells Fargo did not give them a chance to prove that they already had insurance (which the complaint alleges that they had).

Given that Hua and Mu claim not to have learned about the force-placed insurance until 2017, this issue did not come up at the 2015 state-court trial.

---

[1] Force-placed insurance, also known as creditor-placed or lender-placed insurance, is an insurance policy placed by a lender on a home when the property owner's own insurance has lapsed and the borrower does not secure a replacement.

2

2. *Loan Modification Applications*

Hua and Mu applied for loan modifications in February and May of 2017. Both times, Wells Fargo rejected their application on the basis of insufficient paperwork. Hua and Mu insist that they submitted a complete application each time.

The denials of the loan modifications form the basis for Hua and Mu's fraud claims. As explained below, there are two components to each fraud claim: first, the defendants misrepresented that they had any *authority* to modify the loans, and second, they misrepresented that they had any *intention* to seriously consider Hua and Mu's applications.

Like the force-placed insurance, the issue of loan modifications did not arise in the state-court proceeding, which took place long before Hua and Mu applied for a loan modification.

### COUNTS IN THE COMPLAINT

The complaint contains ten counts:

1. Common-law fraud brought against Wells Fargo and Select Portfolio Servicing (SPS).

2. Truth in Lending Act (TILA) violations brought against all defendants.

3. Fair Debt Collection Practices Act (FDCPA) violations brought against Wells Fargo and SPS.

4. Fraud under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) brought against all defendants.

5. Breach of contract brought against all defendants.

6. Unjust enrichment brought against Wells Fargo and SPS.

7. Wire fraud brought against Wells Fargo and Select Portfolio Servicing (SPS).

8. Real Estate Settlement Practices Act (RESPA) violations brought against Wells Fargo and SPS.

9. Fair Debt Collection Practices Act violations brought against Wells Fargo and SPS.

3

10. <u>Real Estate Settlement Practices Act</u> violations brought against Wells Fargo and SPS.

Thus, only three counts (Truth in Lending Act, Unfair Trade Practices and Consumer Protection Law, and breach of contract) name MERS and AHMA, the two defendants who handed off their legal interests in the mortgage back in 2012. The other seven counts are against only Wells Fargo and SPS, who have held or serviced the mortgage since then.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

ANALYSIS

As explained below, the Court (1) dismisses MERS and AHMA from the case; (2) dismisses the statutory consumer-protection claims; and (3) dismisses with leave to amend the common-law claims.

## I. *AHMA and MERS had no interest in the mortgage at the time of the alleged fraud.*

Counts 2, 4, and 5 (alleging TILA violations, UTPCPL violations, and breach of contract) name as defendants not only Wells Fargo and SPS, but also their predecessors AHMA and MERS. However, AHMA and MERS's interests in the mortgage were extinguished in March 2012, when the mortgage was transferred to Wells Fargo. Neither AHMA nor MERS are alleged to have been involved in the mortgage after 2012. As a result, they cannot be liable for fraud in the loan modification applications in 2017. Accordingly, at oral argument, counsel for Hua and Mu agreed to dismiss defendants AHMA and MERS from the case, and they are indeed dismissed.

## II. *Because the property was an investment property, the consumer-protection statutory claims are dismissed.*

For Hua and Mu to access the consumer protection statutes at issue, the property and loan must have been for personal, rather than commercial, use. Because plaintiffs admit through their counsel that the property here was an investment property, the claims based on violations of the TILA, the FDCPA, the UTPCPL, and the RESPA are dismissed.

All four statutes are triggered by personal, non-commercial use. The TILA applies only to transactions "primarily [intended] for personal, family, or household purposes," 15 U.S.C. § 1602(h), not to "transactions involving extensions of credit primarily for business, commercial, or agricultural purposes," *id.* at § 1603(1). The FDCPA applies only to debts undertaken "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The UTPCPL applies only to transactions entered into "primarily for personal, family, or household purposes." 73 Pa. C.S. § 201-9.2(a); *see also Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001). The RESPA does not apply to extensions of credit "primarily for business, commercial, or agricultural purposes." 12 U.S.C. § 2606(a)(1); *see also Hinchlife v. Option One Mortg. Corp.*, No. 08-2094, 2009 WL 1708007, at *4 (E.D. Pa. June 16, 2009) (denying a RESPA claim because the plaintiff had not shown that the loan was for personal use).

At oral argument, Hua and Mu's counsel stated that the property at issue was an investment property. Hua and Mu never lived there; instead, they rented it out to others and used the property for collecting rental income. Therefore, all claims based on consumer-protection statutes (counts 2, 3, 4, 8, 9, and 10) are dismissed.

### III. Remaining Common-Law Claims

The remaining claims are for common-law fraud (count 1), breach of contract (count 5), unjust enrichment (count 6), and wire fraud (count 7). The Court considers each claim in turn.

#### A. *Common-Law Fraud (Count 1)*

The gist of this count is that Wells Fargo and SPS misleadingly told Hua and Mu that their application for a loan modification would get a fair shake. But, according to the complaint, the defendants had neither the *authority* nor the *intention* to modify the loan.

6

For the analysis that follows, that distinction matters a great deal. As to the first two arguments — *Rooker-Feldman* and res judicata — Hua and Mu's claim as to the defendants' authority is dismissed, but that the claim as to the defendants' intention survives. However, the third argument (that Hua and Mu did not sufficiently plead fraud in general) precludes Hua and Mu's claim as to the defendants' intention.

1. *Rooker-Feldman*

The parties dispute the extent to which the *Rooker-Feldman* doctrine bars this Court from deciding a claim that amounts to appellate review of the state-court foreclosure judgment. "The *Rooker-Feldman* doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005); *see also Landce v. Dennis*, 546 U.S. 459, 463 (2006); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine is triggered when: (1) the plaintiff in the federal case lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the state-court judgment was entered before the federal case was filed; and (4) the plaintiff seeks federal review and rejection of the state-court judgment. *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 156, 166 (3d Cir. 2010).

The first and third elements are not in dispute. As to the second element — that the plaintiff's injury must be caused by the state-court judgment — courts ask whether the plaintiff "is attacking the state court judgment" or merely "challenging the defendant's conduct in obtaining it." *Hua v. U.S. Bank Nat. Ass'n*, No. 14-6767, 2015 WL 1071606, at *2 (E.D. Pa. Mar. 11, 2015).[2]

---

[2] This 2015 *Hua* case involved the same plaintiffs challenging a different state-court foreclosure judgment in federal court.

As to the fourth element — whether the plaintiff seeks federal rejection of a state-court judgment — courts ask whether the federal claim is "inextricably intertwined" with the state adjudication. The two are inextricably intertwined when "federal relief can only be predicated upon a conviction that the state court was wrong." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Knapper*, 407 F.3d at 580).

In this case, Wells Fargo seeks to use the *Rooker-Feldman* doctrine as a shield against all of Hua and Mu's claims. The bank points out that the mortgage foreclosure was fully litigated in state court, which reached a final judgment long before Hua and Mu brought this case. Therefore, Wells Fargo argues, to grant judgment for Hua and Mu would be to determine that state court was wrong about its foreclosure judgment.

In response, Hua and Mu place all of their eggs in one out-of-state basket, a recent district court decision from New Jersey. *See Puche v. Wells Fargo N.A.*, 256 F. Supp. 3d 540 (D.N.J. 2017).[3] In *Puche*, as in this case, Wells Fargo obtained a final judgment of foreclosure in state court. Also as in this case, the losing mortgagees sued in federal court for RESPA and TILA violations relating to their application for a loan modification.

Wells Fargo moved to dismiss the case on the basis of the *Rooker-Feldman* doctrine. The court rejected the bank's argument for two reasons. First, because part of the underlying state case transpired in a confidential mediation, the court could not "infer that [the mortgagors'] claims were already litigated in state court." *Id.* at *3. Second, a ruling as to the scope of Wells Fargo's federal statutory obligations to review the loan modification application would have little bearing on the state-court foreclosure judgment: "A conclusion as to statutory duty does not

---

[3] Indeed, this is the *only* argument that Hua and Mu advance in response to the motion to dismiss.

8

second-guess a state foreclosure judgment." *Id.* at *4 (citing *Nivia v. Nation Star Mortgage*, 620 Fed. App'x 822, 824 (11th Cir. 2015)).

The *Rooker-Feldman* doctrine applies to Hua and Mu's claim that Wells Fargo had no *authority* to modify the loan, but nothing more. At bottom, any argument about the bank's authority to modify the loan goes to the bank's standing to foreclose in the first place. But the bank's standing was litigated in the state court. *See* Doc. No. 12-1 ¶ 8-9; Doc No 12-1, at 16. In other words, to hold that Wells Fargo *lacked* any authority to modify the loan would be to reject the state court's conclusion that the bank *had* authority to bring a foreclosure action. *Cf.* Note, *Improving Relief from Abusive Debt Collection Practices*, 127 HARV. L. REV. 1447, 1459 (2014) ("Consumers challenging a default judgment secured through allegedly unlawful acts in a state court proceeding are exactly the kinds of state court losers covered by the *Rooker-Feldman* doctrine.")

The other element of the alleged fraud surrounding the loan modification — that Wells Fargo had no *intention* to modify the loan — survives the bank's *Rooker-Feldman* objection. Wells Fargo's intentions were not litigated in state court; indeed, Hua and Mu allege that Wells Fargo did not misrepresent its intentions until two years *after* the final judgment in state court.

2. Res Judicata

The *Rooker-Feldman* doctrine is only the first of two preclusion arguments invoked by Wells Fargo. The other is res judicata. As the *Hua* court explained, even if a plaintiff's injury is not caused by a state-court judgment (triggering *Rooker-Feldman*), "the federal suit . . . is, instead, subject to state law principles of preclusion." *Hua*, 2015 WL 1071606, at *3 (citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

9

By "res judicata," the parties seem to mean both claim preclusion and issue preclusion. The rule for claim preclusion is that "a claim may not be asserted if . . . there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). The rule applies "not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id.*; *see also O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1065 (3d Cir. 1991); *McNasby v. Crown Cork & Seal Co.,* 888 F.2d 270, 276 (3d Cir. 1989).

The rule for issue preclusion, on the other hand, is that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a difference cause of action involving a party to the prior cause of action." *Tyler v. O'Neill,* 52 F. Supp. 2d 471, 474 (E.D. Pa. 1999); *see also Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991); *Balent*, 669 A.2d at 313.

In this case, claim preclusion is not at play. Hua and Mu's claims arose *after* the state-court judgment in 2015.[4] Issue preclusion, on the other hand, has the same preclusive effect as under the *Rooker-Feldman* doctrine. As explained above, the issue of Wells Fargo's standing to foreclose was fully litigated in state court. *See* Doc. No. 12-1 ¶ 8-9; Doc No 12-1, at 16. This precludes Hua and Mu's argument that the bank lacked authority to modify its loan; a state court had already determined that Wells Fargo was Hua and Mu's creditor.

---

[4] Indeed, the closest candidate for claim preclusion is not the loan modifications (the subject of this count), but the force-placed insurance. Although Wells Fargo argues that force-placed insurance was obtained in 2014, and therefore must have been considered in the state court's 2015 debt judgment, Hua and Mu have alleged that force-placed insurance was not discovered, and therefore could not have been considered, until 2017.

3. *Insufficient Fraud Pleading*

Wells Fargo argues that the complaint fails to sufficiently plead fraud. In Pennsylvania, the elements of fraud are (1) a material representation by the defendant, (2) made with knowledge or recklessness as to its falsity, (3) stated with the intent to mislead, (4) upon which the plaintiff justifiably relies, (5) proximately causing an injury. *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. 2014).[5]

Federal law imposes heightened pleading standards for fraud. "[A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir.2004)); *see also* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.

In this case, Hua and Mu allege that they sought to negotiate a loan modification but that Wells Fargo never responded. The complaint lacks allegations of any intent to mislead or of any injury due to justifiable reliance. Indeed, at oral argument, Hua and Mu's counsel conceded (1) that the complaint never alleged justifiable reliance and (2) that, even had Hua and Mu justifiably relied on the bank's representations about the loan modification applications, they had no

---

[5] The complaint alternatively states that Pennsylvania and New Jersey law governs this case. The mortgage states that it will be governed by federal law and by the law of the state where the property is located. Because the property in question is in Philadelphia, Pennsylvania law applies.

11

absolute right to a loan modification. Thus, count 1 for common-law fraud is dismissed as insufficiently pleaded.

## B. *Breach of Contract (Count 5)*

Hua and Mu's fifth count is for breach of contract. Although this claim is apparently related to the loan modification applications, the complaint does not specify which contract was breached — let alone a specific term in a contract. But a claim for breach of contract must plead the breach of a specific duty imposed by a contract. *Guerra v. Redevelopment Auth. of City of Phila.*, 27 A.3d 1284, 1289 (Pa. Super. 2011) (quoting *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002)). Therefore, this count is dismissed as insufficiently pleaded thus far.

## C. *Unjust Enrichment (Count 6)*

Hua and Mu's sixth count alleges that the defendants were unjustly enriched when they fraudulently denied the loan modification applications. To the extent that this claim is yoked to the fraud claims, it faces the same uphill battles on *Rooker-Feldman* and res judicata. In addition, a party may only bring an unjust enrichment claim in the absence of a contract. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999). Given that the parties entered into a mortgage contract, this claim is dismissed.

## D. *Wire Fraud (Count 7)*

In addition to common-law fraud, Hua and Mu bring a claim for wire fraud under 18 U.S.C. § 1343. As an initial matter, it is unclear whether § 1343, a criminal statute, provides Hua and Mu with a private cause of action. They have cited no case to that effect, and at oral argument their counsel stated that the criminal provision did not give rise to a private cause of action.

Even if Hua and Mu have a cause of action for wire fraud, this claim fails for the same reasons as the claim for common-law fraud. First, fraud as to Wells Fargo's authority to modify the loan is precluded by the *Rooker-Feldman* doctrine and by res judicata. Second, as explained above, Hua and Mu's entire fraud claim (that Wells Fargo had neither authority nor intent to modify the loan) fails as insufficiently pleaded. The complaint lacks allegations of any intent to mislead or of any injury due to justifiable reliance. It does not allege a specific date or place of the alleged fraud, and it fails to separate out allegations as to each defendant. The Court is entirely disinclined to reach so deeply into the bag of unprecedented rulings to turn a violation of a criminal statute into a civil damages opportunity as this one would have to be. Therefore, Hua and Mu's claim for wire fraud is dismissed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted and the plaintiffs are granted leave to file an amended complaint.

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE